IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

DEMEL HANNAH, )
  )
  Plaintiff, )
  )
  v. ) No. 11-cv-3432
  )
JULIA VINCENT, )
STIRLING EDWARDS, )
KELLY L. GRAHAM, and )
LEONTA L. JACKSON, )
  )
  Defendants. )

## OPINION

**BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:**

Plaintiff, currently incarcerated in Pontiac Correctional Center and proceeding pro se, pursues First Amendment claims based on a disciplinary report and subsequent discipline he received for language he used in a grievance.

Defendants move for summary judgment. After reviewing the evidence, the Court concludes that a rational juror could find that the language used by Plaintiff in his grievance could not reasonably be interpreted as threatening or intimidating. A rational jury could therefore

find that the punishment Plaintiff received for using that language was in retaliation for Plaintiff exercising his First Amendment rights. Accordingly, summary judgment is denied.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). In response, the nonmovant must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

# FACTS

The facts are largely undisputed. During his incarceration in Western Illinois Correctional Center, Plaintiff repeatedly attempted to obtain restoration of good conduct credits. Plaintiff sent his requests to Paul Vincent, who is, according to Plaintiff, the husband of Defendant Julia Vincent. Plaintiff's attempts to restore his good time were unsuccessful, which led Plaintiff to file a grievance on March 4, 2011:

> **Brief Summary of Grievance:** This grievance is being taken due to a recent denial of restoration of good time on the basis of the nature of the offenses which resulted in the loss of time. Since being a resident of the facility I've submitted for restoration of good time approximately 11 times and I've been consistently denied for 1 of 3 reasons. It's either because the committee needs more observation to make a determination, because I've exhibited poor conduct since my last submission, or because granting restoration at this time will somehow undermine the seriousness of the offense. If you observe my record far as the offense which resulted in the loss of time it's apparent that I once struggled with substance abuse and anger. Since Oct. of 2005 I've been drug tested numerous times and every time I've passed with flying colors. Furthermore, I went nearly 6 years without engaging in any physical contact. The staff assault that I caught in Lawrence C.C. in 2003 was a minor assault which is why only 3 months was revoked. Moreover, the assault didn't allege that I struck the officer in any capacity. The ticket stated that I yanked on the handcuff which caused the officer to scrape his hand on the door. Over a 5 year span I've acquired my general equivalency diploma, lifestyle redirection certificate, anger management certificate, computer technology certificate, held a machine operator position in the laundry facility, and I'm currently employed as a vocational janitor. Mr. Van Strien

would have noticed this [if] he would have truthfully checked my status.

**Relief Requested:** I request that I be given a fair and complete evaluation by the committee whereas I can attempt to forge a counter attack against the members that refuse to grant restoration.

(Pl.'s 3/4/11 grievance, d/e 46-1, pp. 1-2).

Plaintiff marked this grievance an emergency. However, the Warden, or his designee, checked the box on the form which stated "No; an emergency is not substantiated. Offender should submit this grievance in the normal manner." Id. The grievance was returned to Plaintiff, whereupon Plaintiff submitted the grievance to his counselor, Defendant Julia Vincent. Julia Vincent received the grievance on March 31, 2013. (Counselor's Response to Pl.'s 3/4/11 grievance, d/e 46-1, p. 1).

Meanwhile, on March 23, 2013, Defendants Julia Vincent and Kelly Graham, acting in their capacities as Adjustment Committee members, recommended that Plaintiff be found guilty of insolence for remarking to an employee that she was "sure looking good today." Plaintiff was punished with a grade demotion and a job assignment change.

On April 5, 2011, Plaintiff filed a grievance about the punishment for insolence, complaining in part that Julia Vincent's participation in the disciplinary hearing constituted a conflict of interest with her role as Plaintiff's

counselor.  Plaintiff stated that Julia Vincent "has a history of distorting statements rendered by inmates and a history of ruling in favor of staff members."  (Pl.'s 4/5/11 grievance, d/ 46-1, pp. 6-7).  Plaintiff asked for expungement of the discipline.  He also asked that Julia Vincent "be permanantely [sic] removed from the adjustment committee based on her historical bias towards inmates."  Id.  Plaintiff marked this grievance an emergency.  However, no response by the Warden or anyone else is on the grievance in the record.

On April 6, 2011, the day after Plaintiff had filed his emergency grievance complaining about Julia Vincent, Julia Vincent responded to Plaintiff's grievance about the refusal to restore any of Plaintiff's good time credits.  Julia Vincent wrote "You have been given full administrative review and you may request again in 90 days."  (Counselor's Response to 3/14/11 grievance, d/e 46-1, p. 1).  The same day (April 6, 2011) Julia Vincent wrote a disciplinary report against Plaintiff accusing Plaintiff of intimidation and threats based on the language Plaintiff had used in the grievance.

Defendants Graham and Edwards recommended that Plaintiff be found guilty of intimidation or threats, reasoning that "Counselor J. Vincent's DOC 0317 reflects above named Offender submitted a grievance that

included this statement [:]   I can attempt to forge a counter attack against the members that refuse to grant restoration."   (4/12/11 Adjustment Committee Final Summary Report, 46-1, p. 3).   Whether the Adjustment Committee had a copy of the complete grievance when they made this determination is not in the record.   Plaintiff ultimately received a grade demotion and one month of segregation, a punishment approved of by the Warden's designee, Richard Young.   Plaintiff personally talked to the Warden about the unfair punishment after Plaintiff's release from segregation.   The Warden promised to look into the matter, but nothing was done.

    According to Plaintiff, after Plaintiff finished serving his segregation Julia Vincent threatened Plaintiff with more segregation if he filed further grievances.   (Pl.'s Dep. p. 36).   In particular, Plaintiff alleges in his complaint that Julia Vincent said to him, "You feel my might?   If you file something else you're going back to segregation."   (Complaint, p. 3).

    Ultimately, Plaintiff successfully challenged his discipline for intimidation or threats, but not before he had served his one month in segregation.   On October 25, 2011, the Administrative Review Board found Julia Vincent's charge of intimidation or threats to be "unsubstantiated."

The ticket was ordered expunged. (10/25/11 letter from the Administrative Review Board, d/e 46-1, p. 1).

## ANALYSIS

Plaintiff maintains that Julia Vincent wrote the disciplinary report against Plaintiff for intimidation and threats in retaliation for Plaintiff's grievance about his good time (because Julia felt that the grievance impugned her husband Paul) and in retaliation for Plaintiff's grievance seeking Julia Vincent's removal as an Adjustment Committee member.

Inmates have a First Amendment right to free speech and to petition for the redress of grievances, subject to legitimate penological objectives such as security. See Pell v. Procunier, 417 U.S. 817, 822 (1974)("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir.2010)("A prisoner has a First Amendment right to make grievances about conditions of confinement."). Retaliation for exercising these rights is prohibited. Babcock v. White, 102 F.3d 267, 276 (7th Cir. 1996).

To survive summary judgment, Plaintiff must first show that Defendants' adverse actions were motivated, at least in part, by retaliation

for Plaintiff's protected First Amendment activity.   Defendants then must rebut this inference with evidence that the adverse action would have occurred anyway.   The burden then shifts back to Plaintiff, who must have evidence that Defendants' innocent explanation is pretextual.   In the end, Plaintiff must prove that retaliation was the real motive for the adverse action.   Thayer v. Chiczewski, 705 F.3d 237, 251 (7th Cir. 2012).

Defendants argue that Plaintiff's "counterattack" statement was not protected speech because Plaintiff has no First Amendment right to threaten or intimidate prison employees.   Defendants are correct that insolence and threats are not protected First Amendment activity in the prison setting, even if couched in a grievance.   See, e.g., Watkins v. Kasper, 599 F.3d 791, 797–98 (7th Cir. 2010)(inmate had no protected First Amendment right to make complaints directly to librarian in "confrontational, disorderly manner"); Hale v. Scott, 371 F.3d 917 (7th Cir. 2004)(inmate had no protected First Amendment right to state libelous rumor in grievance that officer was engaging in sexual misconduct); Ustrak v. Fairman, 781 F.2 573, 580 (7th Cir. 1986)(inmate letter calling officers "stupid lazy assholes" and inviting officers to "bring their fat asses around the gallery" not protected speech); Felton v. Huibregtse, 2013 WL 2249536 (7th Cir. 2013)(unpublished)(inmate's letter to

Page **8** of **13**

warden outside of grievance process stating "any idiot could see" was not protected speech).

In the cases cited above, however, the speech in question clearly crossed the line. That is not the case here. Here, Plaintiff asked "to be given a fair and complete evaluation by the committee whereas I can attempt to forge a counter attack against the members that refuse to grant restoration." In the context of Plaintiff's grievance, this remark arguably meant no more than Plaintiff wanted an opportunity to present all his evidence to counter the committee's reasons for repeatedly denying Plaintiff's requests for good time restoration. Defendants do not explain why they believed the statement was threatening or intimidating.

Other evidence, drawing inferences in Plaintiff's favor, suggests that Defendants did not truly believe Plaintiff's remarks were threatening or intimidating. First, the Warden (or his designee) mentioned nothing about inappropriate language when he directed Plaintiff to resubmit the same grievance in the normal manner. Second, though Julia Vincent received Plaintiff's grievance on March 31, 2011, she did not write the disciplinary report until April 6, one day after Plaintiff had filed his emergency grievance about Julia Vincent. If Julia Vincent had truly felt the statement was

threatening, why did she wait until nearly a week later to write a disciplinary report?   Lastly, Plaintiff says that Julia Vincent threatened to put Plaintiff back in segregation if he filed further grievances.   This is admissible at trial as an admission by a party opponent.   Fed. R. Evid. 801(d)(2).   In sum, Plaintiff has enough evidence to meet his prima facie burden on summary judgment and to overcome Defendants' innocent explanation for their actions.

However, the Court agrees with Defendant Warden Jackson that Jackson cannot be held personally responsible for the constitutional violations.   To be personally responsible, Jackson must have caused, directed, participated in, approved of, facilitated, or turned a blind eye to the misconduct.   Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988).   Warden Jackson cannot be liable solely because he is in charge.   Kuhn v. Goodlow, 678 F.3d 552, 556 (7th Cir. 2012)( "'An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'")(quoted cite omitted); Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001)(no respondeat superior liability under § 1983).

Plaintiff does not dispute that Jackson's designee, not Jackson himself, signed off on the adverse actions taken against Plaintiff. Plaintiff argues that Jackson is still personally responsible because Plaintiff spoke to Jackson after Plaintiff was released from segregation. According to Plaintiff, Jackson promised in this conversation to look into the matter. (Plaintiff's Dep. p. 49). That conversation is not enough for a juror to find that Jackson was personally responsible for the violations. As Plaintiff admits, by the time Plaintiff spoke to Jackson, Plaintiff had already been released from segregation. Id. Further, Jackson maintained in his answer to Plaintiff's interrogatories that Jackson believed Julia Vincent had filed her report in good faith. Failing to take Plaintiff's side in the dispute does not violate the Constitution. George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); Soderbeck v. Burnett County, 752 F.2d 285, 293 (7th Cir. 1985)("Failure to take corrective action cannot in and of itself violate section 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior . . . ."); Crowder v. Lash, 687 F.2d 996, 1006 (7th Cir. 1982) (supervisor not personally

responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene). Summary judgment will therefore be granted to Defendant Jackson.

Defendants assert qualified immunity, arguing that "there is no case law that clearly establishes the issuance of a disciplinary ticket for threatening or disrespecting a correctional employee is unconstitutional." (Defs.' Brief, d/e 44 p. 12).   That argument looks at the facts in the light most favorable to Defendants, which the Court cannot do at this stage.   Drawing inferences in Plaintiff's favor, Julia Vincent wrote the report not because she honestly believed that Plaintiff's grievance was threatening or intimidating, but because she wanted to retaliate against Plaintiff for filing that grievance and/or the subsequent grievance Plaintiff filed against her.   Retaliation for filing grievances has long violated the Constitution.   Babcock v. White, 102 F.3d 267, 276 (7th Cir. 1996)("The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . . as well as the right to be free from retaliation for exercising this right.").   Defendants are not entitled to qualified immunity.

IT IS ORDERED:

Defendants' motion for summary judgment is granted in part (d/e 43). Summary judgment is granted in favor of Defendant Jackson. The clerk is directed to terminate Jackson. Judgment will be entered in Jackson's favor at the close of this case. Defendants' motion for summary judgment is otherwise denied. The case is referred back to U.S. Magistrate Judge David G. Bernthal for a supplemental settlement conference.

ENTER:   November 19, 2013

　　　　　　　　　　　　　　_____s/ Byron G. Cudmore_____
　　　　　　　　　　　　　　　　BYRON G. CUDMORE
　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE